Filed 8/16/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re<br><br>ANDRE PIERRE HARRIS<br><br>for Change of Name. | B322152<br><br>Los Angeles County<br>Super. Ct. No. 22STCP00711 |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Affirmed.

Andre Pierre Harris, in pro per, for Petitioner and Appellant.

_____

Andre Pierre Harris is the name on Harris's birth certificate. Harris applied to the trial court in March 2022 to change his name to :Minko: Yona-Gvinge: El-Bey®. On the ground that Harris has "outstanding warrant(s)," the trial court denied Harris's petition. We affirm because there was no abuse of discretion. (See *In re Ross* (1937) 8 Cal.2d 608, 609.)

Before the hearing on his petition, Harris published his request four times in a newspaper of general circulation, as

required by Code of Civil Procedure section 1277, subdivisions (a)(2)(A) and (a)(3).  Had his request for a change of name been for purposes of gender affirmance, under Code of Civil Procedure Section 1277.5, subdivision (b), effective January 1, 2019, publication would not have been required.

The trial court evidently ran Harris's name through law enforcement records and found "warrant(s)."  It issued a tentative opinion stating it planned "to deny the petition on the ground that petitioner has an outstanding warrant(s)."  Its final order stated that, "[h]aving heard from petitioner," the court was adopting its tentative ruling and the petition was denied without prejudice.  The "petitioner may reapply."

Harris's appellate record does not describe his court hearing.  Nor does this record elaborate the number or nature of the "warrant(s)" that were the focus of the court's ruling.

By statute, it was proper for the trial court to check law enforcement records when considering Harris's petition to change his name.  The California Legislature has directed courts to use the California Law Enforcement Telecommunications System (CLETS) and Criminal Justice Information System (CJIS) to determine whether a name change applicant must register as a sex offender.  "If a court is not equipped with CLETS or CJIS, the clerk of the court shall contact an appropriate local law enforcement agency, which shall determine whether or not the petitioner is required to register . . . ."  (Code Civ. Proc., § 1279.5, subd. (f).)

By passing this statute, the Legislature sought to ensure people required to register as sex offenders cannot change their names to frustrate the registration requirement.

2

If this law enforcement check reveals the applicant has outstanding warrants, it is not an abuse of discretion for the trial court to deny the name change until the applicant rectifies the situation.  Arrest warrants are written orders, signed by a magistrate, commanding the arrest of named people.  (4 Witkin & Epstein, Cal. Criminal Law Pretrial (4th ed. 2023) Issuance and Service of Warrant, § 18; see Pen. Code §§ 814-816.)  Bench warrants may issue for bailed defendants who do not appear. (4 Witkin & Epstein, Cal. Criminal Law Pretrial, supra, § 18.)

Arrest and bench warrants serve the public interest by bringing people to court who should come to court.  Because warrants name the wanted person, a name change could frustrate their function.  People wanted by law enforcement should not be able to use the legal system to avoid obligations to the legal system.

Harris argues this is a case of mistaken identity.  He cites page 18 of the record, which ostensibly is a request for judicial notice he filed in the trial court.  This request, however, begins with a set of factual assertions in the nature of a declaration or a brief.  Harris avers he is a "living soul, the Spiritual man made from the dust with the holy breath of the Creator YHWH (God) [Genesis 2:4-7]."  He is a "native born Mu'ur, native to this land . . . ."  (Cf. *U.S. v. Hillman* (7th Cir. 2015) 610 Fed.Appx. 574, 575-578 (unpublished) [conviction affirmed despite Habib Jimananu–Bey's argument that the government failed to prove he pretended to be a diplomat from a foreign country because the Mu'ur Republic did not exist]; *City of Shaker Heights v. El–Bey* (2017) 86 N.E.3d 865, 866-867 [Brandon Profit El–Bey claimed to be a national of United Washitaw de Dugdahmoundyah Mu'ur; court rejected appeal, commenting that many courts "have rejected

3

similar challenges to convictions based on 'sovereign citizen' or 'sovereign nation' arguments"].)

Harris's request contained other assertions, as well as a request that the court take judicial notice of submissions Harris made to the federal Securities and Exchange Commission and the Federal Trade Commission.

These submissions are not relevant to Harris's petition to change his name. The trial court did not abuse its discretion by failing to discuss this ostensible request for judicial notice.

On appeal, we cannot adjudicate a factual question about mistaken identity. The trial court invited Harris to resubmit his name change application. The trial court is the proper forum for initial resolution of Harris's factual claim.

Harris asserts a procedural violation. He argues no one objected to or appeared to oppose his application, so the trial court was *obligated* to grant his petition. He writes that the court denied his "name change petition in favor of [a] third-party interloper from another state without requiring the party to file written petition objecting to the name change, and without requiring the party to appear in court to testify with firsthand knowledge to claims of controversy against the name."

The record contains no evidence about a third party. We interpret Harris's objection to mean that he is familiar with a warrant issue, that he believes someone in another state is responsible, and that he argues the trial court must approve his petition if no one from that other state appeared or filed objections in this California trial court.

This argument is mistaken.

The statute does allow people, in writing or in person, to be heard and to appear in opposition to name changes. For

4

instance, a court denied one Eugene Weingand's petition to change his name to Peter Lorie. The famous actor Peter Lorre protested the petition by the unknown Weingand, who was no relation to Lorre but while working as a real estate agent had passed himself off as Lorre's son. Weingand bore a physical resemblance to Lorre, and affected a manner of speech similar to Lorre's, but had no family connection with the name Lorre or with any name sounding like Lorre or Lorie. The court held it was no abuse of discretion to deny this name change petition. (*Weingand v. Lorre* (1964) 231 Cal.App.2d 289, 291–294.)

Certainly people *can* appear to oppose a name change. If no one appears, however, the court is not *required* to approve the change. The statute does not mandate approval if no one has registered written or oral opposition. The provision about sex offender registration proves this. That provision implicitly authorizes a court, on its own, to deny a name change. Whether other people do or do not raise objections is immaterial.

Harris levels a different but invalid attack by suggesting the court unethically engaged in the practice of law by representing a "third-party interloper."

It is possible for judges to violate ethical principles by undertaking their own factual investigations into a case being tried to a jury and then calling and questioning their own witnesses before that jury. (See *Ryan v. Commission On Judicial Performance* (1988) 45 Cal.3d 518, 536–537.)

This trial court did nothing like that. This court's conduct was proper. A statute mandated its approach: the court "shall use" law enforcement databases to determine whether the name change applicant must register as a sex offender. (Code Civ.

Proc., § 1279.5, subd. (f).) Harris's charge that the court acted unethically is in error.

Harris suggests the court improperly relied on hearsay by considering the warrants against him. Harris forfeited this objection by offering no timely or specific objection in the trial court. (See Evid. Code, § 353, subd. (a).)

Harris filed a motion in this court to compel a finding in his favor, arguing that we failed to schedule timely oral argument and that no brief opposed his appeal. We deny this motion: oral argument was in the normal course, and the absence of an opponent does not imply decisive merit. (See Cal. Rules of Court, rule 8.220(a)(2).)

On July 20, 2023, Harris filed another document titled "Letter and Notice of Mandatory Judicial Notice of the Indian Civil Rights Act of 1968 referenced as Title II of the Civil Rights Act of 1968." This document is a combination of a declaration asserting facts, a brief asserting legal arguments, and a request for judicial notice of a federal statute. We do take notice of this statute, but it has no bearing on the merits of this appeal. We disregard the aspects of the document that make factual assertions and legal arguments. The trial court and not the appellate court is the right place for factual presentations. We have not requested, and we do not accept, further legal briefing.
///

## DISPOSITION

We affirm the order and do not award costs.



                              WILEY, J.

We concur:


STRATTON, P. J.



GRIMES, J.